# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | | |
|---|---|---|
| ERIC MEL THOMPSON, | * | CIVIL NO. 4:14-cv-00030-RP-SBJ |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | **REPORT AND** |
| WILLIAM SPERFSLAGE, NICK | * | **RECOMMENDATION** |
| LUDWICK, DAVE DEGRANGE, DEB | * | |
| NICHOLS, CONNIE PARMETER, PAUL | * | |
| GAGER, WILLIAM ELL, STEVE JANIC | * | |
| and TRICIA JOHNSTON, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## I. INTRODUCTION

Eric Thompson is an inmate at the Fort Dodge Correctional Facility in Fort Dodge, Iowa. He filed a pro se Complaint (Doc. No. 1) pursuant to 28 U.S.C. § 1983 on January 24, 2014, asserting various allegations against several individuals. His claims are primarily based on alleged violations of his constitutional rights from the application of Disciplinary Rule 34 which restricts inmates from engaging in a business while incarcerated. (*Id.* p. 2.) Thompson also asserts claims of retaliation. (*Id.*) He seeks injunctive relief and money damages. (*Id.*)

On December 8, 2014, defendants filed a Motion for Summary Judgment (Doc. No. 47) asserting they are entitled to judgment as a matter of law. They contend Rule 34 was appropriately applied to Thompson and argue Thompson cannot establish his claims of retaliation. After being granted additional time to respond, Thompson filed a Brief (Doc. No. 56) and other supporting documents in resistance to the motion on April 16, 2015.

The case was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) for further proceedings, including further review of the record and the pleadings, an evidentiary

hearing, if necessary, hearing any oral arguments, and a submission of a report and recommendation regarding disposition of the case to United States Senior Judge Robert W. Pratt. (Order (Doc. No. 52).)   This report and recommendation is hereby submitted pursuant to that order.   For the following reasons, it is recommended that defendants' motion for summary judgment be granted.

## II. HISTORY

Defendants contend Thompson's claims are precluded by decisions made by Judge Pratt, and ultimately affirmed by the Court of Appeals for the Eighth Circuit, in prior litigation brought by Thompson against employees of the Iowa Department of Corrections.   In addition, Judge Pratt has narrowed the claims raised in the present action in prior orders.   Consequently, a review of those proceedings is necessary to properly frame the summary judgment issues at hand.

### A. Prior Litigation

A prior lawsuit was brought by Thompson against prison officials[1] in May of 2010 while he was an inmate at the Iowa State Penitentiary ("ISP") in Fort Madison, Iowa. (*See* Case No. 4:10-cv-00232-RP-CFB ("*Thompson* I").)   Lawsuits brought by his daughter, Katie Beglin, and his mother, Delores Thompson, were later consolidated with his action.   The core question of the combined litigation was "whether Defendants violated Plaintiffs' federal rights when they disciplined Eric for violating the prison rule against operating a business and prevented him from communicating with his mother and daughter about the business." (Order (Doc. No. 137) p. 1.) Plaintiffs asserted "Defendants violated the First and Fourteenth Amendments by (1) wrongly applying to Eric Thompson [the] prison rule against running a business, (2) in the alternative, applying an unconstitutionally vague and overbroad prison rule, and (3) applying the rule against

---

[1]  The named defendants were Cindy Phillips, Darin Gentry, Dave DeGrange, Deb Nichols, Jerry Burt, John Ault, Kent Ruby, LaDonna Wilcox, Michael Savala, Nick Ludwick, Nikki Eaves, Paul Gager, Phillip Eaves, Randy Van Wye, Ron Mower, Sheryl Lockwood and William Sperfslage.

Plaintiffs in a retaliatory and discriminatory way." (*Id.* p. 2.)   The disciplinary proceedings at issue occurred on or about December 19, 2009, March 7, 2010, March 19, 2010, October 21, 2010, and June 21, 2011. (*Id.* p. 9.)

On March 8, 2013, Judge Pratt concluded defendants were entitled to judgment as a matter of law and dismissed the case. (*Id.* p. 27.)   Judge Pratt rejected plaintiffs' argument that Rule 34 was overbroad or void for vagueness and found "there was 'some evidence' to support the conclusion that [Eric] violated Rule 34 in each instance he was disciplined." (*Id.* pp. 20-23.)   As set forth in the order, for prison disciplinary procedures, due process requires there be only "some evidence" to support the decision. (*Id.* at 22; citing *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011).)   Judge Pratt further found that Rule 34 does not excessively impinge on Thompson's constitutional rights under the analysis of *Turner v. Safley*, 482 U.S. 78 (1987). (*Id.* pp. 23-25.)

Judge Pratt also rejected plaintiffs' claims of retaliation, stating that "[a] First Amendment retaliation claim fails if there is some evidence that the inmate violated a prison rule." (*Id.* pp. 25-26; citing *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994).)   Plaintiffs' alleged violation of equal protection rights was also rejected because Thompson failed to show he was "similarly situated to the other inmates who were treated differently." (*Id.* at 26.)   Judge Pratt explained:

> Thompson did not give limited advice to his family on one or two occasions. His continuing difficulties and increased punishment occurred as a result of his persistent refusal to abide by the prison rules. Under the circumstances, no reasonable juror could find he was denied his equal protection rights.

(*Id.*)   Finally, even assuming plaintiffs could show the violation of constitutional rights, Judge Pratt determined defendants were entitled to qualified immunity. (*Id.* pp. 26-27.)

On April 14, 2014, the Eighth Circuit affirmed the decision concluding summary judgment in favor of defendants was warranted:

> Viewing the admissible evidence before the district court in the light most favorable to appellants, the prison rule at issue was not unconstitutional on its face and was not unconstitutional as applied to Eric's conduct. *See Beaulieu v. Ludeman,* 690 F.3d 1017, 1039 (8th Cir. 2012) (analysis of First Amendment facial challenge to prison rule); *Kaden v. Slykhuis,* 651 F.3d 966, 969 (8th Cir. 2011) (per curiam) (analysis of First Amendment as-applied challenge to prison regulation); *Phillips v. Norris,* 320 F.3d 844, 848 (8th Cir. 2003) (analysis of inmate's equal protection claim).

*Thompson v. Ault*, 561 Fed.Appx. 585, 586 (8th Cir. 2014)(per curiam). Thompson's petitions for rehearing were denied (Doc. No. 170) by the Eighth Circuit and his petition for a writ of certiorari before the Supreme Court was closed on January 29, 2015, for failure to comply with the Supreme Court's order to pay the docket fee (Doc. No. 173).

**B. Present Litigation**

Eric Thompson initiated the present action by filing a pro se complaint (Doc. No. 1) on January 24, 2014, while an inmate at the Newton Correctional Facility in Newton, Iowa. His mother and daughter were also named plaintiffs. They asserted claims against the Governor of Iowa and several other individuals associated with the Iowa Department of Corrections.

As described in an Initial Review Order (Doc. No. 8) entered on February 10, 2014, plaintiffs alleged that certain defendants applied Disciplinary Rule 34 against Thompson in an unconstitutional manner, other defendants violated the First, Eighth, and Fourteenth Amendments when they found Thompson guilty of rule violations and imposed punishment on him, and certain defendants "encouraged and manipulated lower-ranking officers to retaliate against Eric Thompson by moving him from institution to institution, filing false disciplinary reports against him, not responding to his claims on appeal of the disciplinary reports, not responding to kites, withholding legal work, acting with deliberate indifference to his safety, and acting with deliberate indifference to his medical needs." (*Id.*) Plaintiffs also claimed "that defendants retaliate against Thompson by repeatedly moving him, which affects his ability to pursue legal matters and communicate with his family, and plaintiffs argue it is an attempt to intimidate plaintiffs into not

filing lawsuits against defendants." (*Id.*)

Delores Thompson and Katie Beglin were dismissed as plaintiffs and the claims asserted by Eric Thompson against several defendants, including the Governor, were also dismissed. (*Id.* at 12.)   Three types of claims were allowed to proceed: (1) claims arising from the application of Disciplinary Rule 34 against Connie Parmeter, Steve Janic, William Ell, and Dave DeGrange (*id.* pp. 5-6); (2) claims arising from disciplinary proceedings in January 2013 against defendants Paul Gager, Tricia Johnston, and Nick Ludwick (*id.* pp. 6-8); and (3) retaliation claims against defendants William Sperfslage, Deb Nichols, Dave DeGrange, Nick Ludwick, and William Ell (*id.* pp. 8-9).   Thompson's request for a temporary restraining order was denied and a hearing was set on his request for preliminary injunctive relief. (*Id.* pp. 10-12.)

Thompson filed a Motion for Leave to File Amended Complaint (Doc. No. 17) on March 6, 2014.   In an Order (Doc. No. 22) entered on March 17, 2014, certain claims in the proposed Amended Complaint (Doc. No. 17-1) were dismissed while others were allowed to proceed.   One claim dismissed by Judge Pratt was for an alleged breach of immunity agreement described as follows:

> Thompson alleges that in 2008, Thompson, ISP Investigator Ron Mower, and Defendant Sperfslage entered into an immunity agreement in which Thompson received immunity during an internal investigation at ISP concerning a sex tape of an officer and an inmate and of the introduction of contraband into the institution. As part of the agreement, Thompson and his mother, Delores Thompson, agreed to cooperate so long as their cooperation was not construed as any admission of guilt, they would not be punished or retaliated against, or held accountable for cooperating, and the cooperation would remain confidential. In addition, Thompson's newborn grandson would be allowed on his regular visitors list.
>
> Thompson alleges that Sperfslage, who is now Deputy Warden at Anamosa State Penitentiary (ASP), allegedly broke that agreement by refusing to allow Delores Thompson on his visitors list at ASP only seven days after Thompson arrived at ASP in October 2013, and giving the reason that Delores Thompson was "aiding the offender in the introduction of contraband." Amended Complaint, ECF No. 17-1, at 9. Thompson alleges that Sperfslage is biased against him and acted in violation of the 2008 immunity agreement. Thompson appealed to Defendant Terry Branstad, the Governor of Iowa, who referred the issue to the Iowa Department of Corrections (IDOC), and Defendant Sheryl Dahm, Assistant IDOC Director

responded by referencing when Delores Thompson could apply again to visit and not responding to Thompson's appealed issues. Thompson further alleges that Defendants Salviati and Dietsch approved Thompson's segregation and transfer to another institution based on only Sperfslage's side of the story and without Thompson present. As proof of his claim, Thompson points to language in Sperfslage's affidavit, "In recent years, Thompson has been repeatedly involved in compromising staff with the introduction of contraband into the prison." Sperfslage Aff. ¶ 6, ECF No. 10-2-, at 60.

(Order pp. 4-5.)   Judge Pratt dismissed the claim for the following reasons:

First, breach of an immunity agreement is not a violation of federal law but rather of state contract law. As such, it does not form the basis of a claim under 42 U.S.C. § 1983. Second, the claim is not a viable supplemental claim brought under 28 U.S.C. § 1367. Thompson's allegations take Sperfslage's comments out of context. A review of the materials demonstrates that throughout 2013, Thompson repeatedly was disciplined, and the stated reason for moving Thompson from ISP to ASP was his continued violation of institutional rules, including operating a business and possession of pornography. ECF No. 10-2, at 36, 41, 45, 50, 54. In the "Offender Transfer to Institution" paperwork, Rich Barlow referred to Thompson's disciplinary history in 2013 and indicated Thompson was "being moved to disrupt his negative impact in institutional operations." Defs.' Ex. G, ECF No. 10-2, at 57. Barlow added:

> 10/8/13 UPDATE:
> Found guilty of another major report for operating a business. This is the 11th disciplinary report this offender has had since 2009 for the same behavior, at this facility. In our attempt to discontinue offender Thompson's repeated and consistent manipulation of agency rules, we are recommending regular periodical alternate placements.

Id. Warden Ludwick at ISP also pointed out Thompson's history of repeated discipline for violating Rule 34 and averred, "The decision was made to transfer him to a number of different institutions. . . . The reasoning was that Thompson, despite repeated disciplines and the court decision, continued to the same behavior. As well, Thompson himself was an offender who would disrupt operations and work behind the scenes to create disruptions in the orderly operations of the prison." Ludwick Aff. ¶¶ 17-18, ECF No. 10-2, at 32. When Thompson arrived at ASP on October 10, 2013, his sanction from October 4, 2013, denying him contact with Delores Thompson for 180 days, was still in effect. See ECF No. 10-2, at 55. Thompson's allegation that Sperfslage acted in violation of a 2008 immunity agreement fails to state a claim, and it will be dismissed. See 28 U.S.C. § 1915A.

(Id. pp. 5-6.)

Judge Pratt allowed Thompson's "amendments to the Complaint regarding the January 24,

2013, and February 11, 2013, acts by Defendants Ell and Gager against Thompson for violating Rule 34, to the extent the claim is not precluded by Thompson's prior lawsuit." (*Id.* p. 13.) He also allowed "to the extent not precluded by the pending appeal, Thompson's amendment that on July 16, 2013, Ludwick continued to refuse Thompson permission to talk with mother and daughter regarding the auto business." (*Id.*) Finally, Judge Pratt allowed "Thompson's supplemental allegations that Sperfslage, DeGrange, Ell, Gager, Nichol, and Ludwick have conspired to stop Thompson from filing lawsuits against them and wrote disciplinary reports against him to justify his transfers to other institutions." (*Id.*)

On April 25, 2014, Thompson filed a second Amended Complaint (Doc. No. 34) without obtaining defendants' consent or leave of court. *See* Fed. R. Civ. P. 15(a)(2). The second Amended Complaint was struck by the court and Thompson's request for preliminary injunctive relief was denied. (Order (Doc. No. 44) p. 2.)

Based on the court's prior orders, the remaining defendants in this case are William Sperfslage (former ISP Deputy Warden), Nick Ludwick (ISP Warden), Dave DeGrange (ISP Correctional Officer), Paul Gager (Administrative Law Judge), William Ell (ISP Activities Specialist), Steve Janic (ISP Correctional Supervisor), Tricia Johnston (Administrative Law Judge), Debbie Nichols (ISP Security Director) and Connie Parmeter (ISP Correctional Officer).

### III. PENDING MOTION FOR SUMMARY JUDGMENT

Defendants filed a Motion for Summary Judgment (Doc. No. 47) on December 8, 2014, with a supporting Statement of Undisputed Material Facts (Doc. No. 47-1), Memorandum (Doc. No. 47-2) and Supplemental Appendix (Doc. No. 47-3). Defendants also rely on their Appendix (Doc. No. 10-2) submitted in support of their Resistance to Plaintiff's Application for Preliminary Injunction (Doc. No. 10). Defendants contend that *Thompson* I precludes the present action but even if the merits of Thompson's claims are considered, he cannot prevail as a matter of law.

Specifically, defendants assert that Thompson cannot establish that defendants applied Rule 34 in an unconstitutional manner, or that defendants violated the constitution in finding Thompson guilty of rule violations and imposing discipline, or that defendants retaliated against Thompson by moving him from institution to institution.

Thompson was granted extensions of time to file a response to the motion on four separate occasions. (*See* Text Orders (Doc. Nos. 49, 51, 54 & 55).)   On April 16, 2015, he filed a Brief (Doc. No. 56) in resistance to the motion with supporting Exhibits (Doc. No. 56-1).   Thompson argues that he can establish that (1) defendants Parmeter, Janic, Ell and DeGrange applied Rule 34 to him in an unconstitutional manner, (2) defendants Gager, Johnston and Ludwick violated the First, Eighth and Fourteenth Amendments when they found him guilty of rule violations and imposed discipline, and (3) defendants Sperfslage, Nichols, DeGrange, Ludwick and Ell encouraged and manipulated lower ranking staff to retaliate against Thompson and move him from institution to institution.   Thompson also stated as follows:

> Plaintiff points out to the court that the Defendants did not address all allowed claims in the Amended Complaints, therefore summary judgment should not be able to be granted on the issues to which the defendants council Mr. Hill failed to address in Defendants motion for summary judgment. The issues not in Defendants motion for summary judgment are: (1) Restricting access to the Courts; (2) First Amendment violation from e-mail from Warden's office denying Plaintiff to teach his daughter the auto business; (3) Access to the courts by planned interference. These claims were brought in and allowed to proceed per Order of the court. Id ECF no. 22 pg 6-7, 8-9, 11-12, for said reasons Plaintiff will not respond on these claims and expect the court to not grant summary judgment on the matters which Defendants failed to address in their motion for summary judgment.

(Pl.'s Brief p. 4.)   Defendants did not file a reply.

After reviewing the parties' written submissions, this magistrate judge found that additional materials were required to comply with Local Rule 56 and to prepare a complete report on the issues raised by the parties.   Consequently, on May 15, 2015, defendants were ordered to file a reply which addresses Thompson's contentions and clarifies the summary judgment issues

to be addressed. (Order (Doc. No. 58) p. 4.)   Thompson was directed to file a response to defendants' reply, a response to defendants' statement of undisputed material facts, and a separate statement of additional material facts that Thompson contends preclude summary judgment. (*Id.*) Defendants were further ordered to file a reply to Thompson's statement of additional material facts. (*Id.*)

Defendants filed a Supplement to Summary Judgment Motion (Doc. No. 59) on May 27, 2015, asserting that summary judgment must be granted as to all claims raised by Thompson. Specifically addressing issues not covered in their initial brief, defendants argue that Thompson cannot establish constitutional violations for denial of access to the courts or a First Amendment violation for allegedly prohibiting Thompson from teaching his daughter the used car business.

On June 17, 2015, Thompson filed a Response to Defendants' Reply (Doc. No. 60), a Response to Defendants' Statement of Undisputed Facts (Doc. No. 60-1), and Plaintiff's Additional Material Facts Which Preclude Summary Judgment (Doc. No. 60-2).   In his Response, Thompson explains that his claims of numerous constitutional violations are derived from the alleged breach of the immunity agreement by defendant Sperfslage:

> Breach of this immunity agreement caused bad relations between Defendant Sperfslage and Plaintiff Parents Delores Thompson and Greg Thompson. Greg Thompson, as the Chief of Police and 50 year veteran in law enforcement, oversen the immunity agreement between his wife Delores Thompson, son Eric Thompson and Defendant Sperfslage. Defendant Sperfslage soon violated this agreement with Plaintiff and his mother Delores. The violation of this immunity agreement fueled dislike between both sides and soon started a retaliatory mindset toward Plaintiff, which led to numerous retaliatory disciplinary actions through the defendants application of rule 34 which forbids prisoners from engaging in business while incarcerated, which was only possible because of Defendant Sperfslage's supervisory position and his retaliatory mindset against Thompson. These retaliatory disciplinary actions fed the necessary requirements for Sperfslage to manipulate and conspire with certain staff prompting them to participate in his retaliation, causing the removal of Plaintiff's mother from his visiting list indefinitely, and placing Plaintiff in the rare high risk Security Threat Group (STG) status, allowing Sperfslage to move him every 30-days to another Iowa institution causing a disruption to both his criminal and federal law suits do to long delays waiting for Plaintiff's legal materials to catch up. This type of movement was

originally designed for high risk gang affiliates to break down their power base. However, when Defendant Sperfslage because the state wide Security Threat Group (STG) (Gang) coordinator during the events in this complaint. Sperfslage's new found position allowed Sperfslage's to orchestrate and make all staff at every prison have to answer him, in reference to Plaintiff's numerous transfers. This also placed Thompson's Parents, Greg Thompson, a 50-year veteran of law enforcement and Chief of Police and his wife, a daycare provider both with impeccable records, in the rare status of a *Security Threat Group/gang*, allowing Sperfslage's retaliation to continue for well over a year, while Plaintiff fumbled through the court without his legal work, eventually costing him to lose a criminal matter and not be able to properly prepare for the suits against Defendants.

(Pl.'s Response pp. 2-3.)   Thompson argues that defendants violated his constitutional right of access to the courts by "stacking" disciplinary reports against him to justify "constantly moving" him and thereby hindering his ability to "defend his multiple legal battles." (*Id.* pp. 3-6.)   He presents further arguments in support of his asserted First Amendment right to teach his daughter the auto business and his claim of "planned interference" or conspiracy by defendants to retaliate and deprive him of access to the courts. (*Id.* pp. 6-9.)

Defendants submitted a Response (Doc. No. 61) to Plaintiff's Additional Material Facts Which Preclude Summary Judgment on June 18, 2015.

A telephonic hearing was held before this magistrate judge on June 19, 2015.   Thompson appeared on his own behalf.   Attorney William Hill appeared on behalf of defendants.   At the close of the hearing, Thompson was granted until June 26, 2015, to file a supplemental brief. Defendants were granted until July 3, 2015, to file a response.

Thompson filed the supplemental Brief (Doc. No. 63) with exhibits (Doc. No. 63-1) on June 29, 2015.   Thompson refutes defendants' contention that his claims are precluded by the prior litigation.   He also presents further argument supporting his claims of First Amendment and due process violations based on alleged retaliation.   Defendants filed their Response (Doc. No. 64) on June 30, 2015.

This magistrate judge now considers the motion for summary judgment to be fully

submitted. As discussed below, and based on the evidentiary record submitted by the parties, Thompson has not shown there is a genuine issue for trial on any of his claims. Defendants are, therefore, entitled to judgment as a matter of law.

## A. Standards for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(moving party has initial responsibility of demonstrating absence of genuine issue of material fact). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)(en banc)(quoting *Celotex Corp.*, 477 U.S. at 324).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At this stage, the court's function is not to determine credibility, weigh the evidence or determine the truth of the matter. *Id.* at 249, 255. Instead, the court views the record in the light most favorable to the nonmoving party and determines whether there is a genuine issue for trial. *Id.*; *see also Torgerson*, 643 F.3d at 1042.

**B. Material Facts**

Eric Thompson has been an inmate of the Iowa Department of Corrections ("IDOC") since 2000. Defendants are, or were during the relevant time period, employees of the IDOC. While Thompson contends the discipline was unwarranted, there is no dispute he has been subject to numerous disciplinary notices and repeatedly found guilty of rule violations.

Primarily at issue here, Thompson has been found guilty of violating Disciplinary Rule 34 which provides as follows:

> Entering into Contracts/Agreements, Operating Businesses - An offender commits an offense under this subsection when the offender enters a contract, unauthorized agreement, or engages in a business without the prior written approval of the Warden/Superintendent.

In addition to the disciplinary proceedings at issue in *Thompson* I, but prior to judgment being entered in that case, Thompson was subject to the following Disciplinary Notice reported by Officer Connie Parmeter on January 22, 2013:

> On January 22, 2013 at 3:06 pm at the Iowa state Penitentiary, I Officer Connie Parmeter was monitoring a phone call placed by Eric Thompson #1150729 to this phone number 319-669-9399. Throughout the phone call offender Thompson kept referring to the person on the phone as Ma or Mom. Ms. Thompson had several vehicles that she was inquiring about prices and purchasing, with offender Thompson, such as a 1994 Ford Mustang, 2009 Ford Fusion, Infinity, and he was also advising her about a 2010 Ford 150 XLT. Ms. Thompson stated "it's kind of fun getting back into car land." Offender Thompson is advising his mother on business matters such as car purchasing and selling. Offender Thompson is disobeying a lawful order by engaging in business activities. Offender Thompson is violating policies by offering services as a consultant in the car business and

conducting business matters without the approval of the warden. Policy # 10-OR-07 states that offenders are not permitted to enter into a contract/agreement incur indebtedness or start or engage in a business or profession.

(Disciplinary Notice No. 20131000689, Defs.' App. (Doc. No. 10-2) p. 35.)   After a hearing on February 4, 2013, Administrative Law Judge ("ALJ") Paul Gager found Thompson guilty of rule violations including Rule 34. (*Id.* pp. 36-37.)   ALJ Gager noted:

> I have reviewed and considered the following evidence: The Disciplinary Notice dated 1/22/13 by Connie Parmeter; recorded phone conversation; offender submitted written argument; and the following statements and admissions of the offender: offender request for a continuance to obtain statement from mother is denied. Offender was served report 1/23/13. Hearing held on 2/4/13. Offender had plenty of time to contact mother for statement. Offender has 6 prior reports for engaging in business without the prior approval of the warden.
>
> * * *
>
> I determine that the circumstances of this offense are more serious than the charged offense (Rule 34), and upgrade the sanctions to the next class. The aggravating factors include: repeat infractions.

(*Id.* p. 36.)   The decision was affirmed by Warden Nick Ludwick who commented to Thompson: "Your inference that my staff have made you choose between helping your friends and family, or being punished is, at best, another attempt to rationalize your inappropriate conduct of operating a business while incarcerated." (*Id.* p. 38.)

Another Disciplinary Notice dated January 23, 2013, was reported by Sergeant Steve Janic as follows:

> On 22 January at approx. 1900 hrs. I Sgt. Steve Janic started a shakedown of property belonging to Thompson, Eric #1150729. During the shakedown the following items of contraband were found, numerous graphic pornography pictures found inside a folder marked Case law. Pictures are enclosed in homemade books made from file folders, inside a folder marked Exhibit List 14 I found a Facebook print out of a Lindsey Schaffer, offender has numerous pieces of paperwork pertaining to the sell, appraisal, reconditioning of automobiles from a company called carorama, a large portion of the automobile paperwork has been copied from a printer, there are numerous automobile inventories with prices, I found paperwork pertaining to a website for Eric Thompson where he lists information about his guitar he owns and will sell for 200.00 dollars to cover legal fees, I found 1 hotpot that has been taken apart and masking tape used to repair wires inside, I found an

ad for Auto credit from Katie Thompson with a memo showing the ad was denied at ISP because it violated policy, 1 address book with information on care sales, found a credit profile a person named Corey Beglin, there are numerous candy and gum wrappers hidden in his legal paperwork. The wrappers are made of aluminum. I found a set of finger nail and toe nail clippers with one piece missing. I found three newspapers "the Sunday World Herald" dating back to 2010 which violates ISP policy. A receipt from Nebraska's Independent Auto Dealers ASSN for $26.46. It should be noted that most of the items listed were found hidden among this Offender's legal paperwork. Evidence was sent to ALJ for review. End of report.

(Disciplinary Notice No. 20131000723, Defs.' App. (Doc. No. 10-2) p. 40.)    After a hearing on February 11, 2013, ALJ Gager found Thompson guilty of rule violations including Rule 34 and made the following findings of fact:

On January 22, 2013, at approx. 1900 hours, Sgt Janic conducted a shakedown of property belonging to offender Eric Thompson 1150729. During the shakedown, the following items of contraband were found: (1a) an altered hotpot; (1b) dozens of loose pages and documents relating to Thompson's wholesale used care buying and selling business (ONCAR-Omaha and ONCAROMAHA.com); (1c) an address book that contains codes for selling and buying cars; (1d) three newspapers that are dated 2010; (2) a FACEBOOK printout of a female by the name of "Lindsey Schaffer"; a newspaper picture of a young female resembling Linsey Schaffer is taped to the back of the FACEBOOK printout; (3) personal information for a person named "Natasha Kristen Rau" including her address, DOB, phone numbers, social security number and what she studies in school; (4) torn out pages from magazines; (5) seven pages describing a web page for Eric Thompson; (6) 95 pages of "post sale results-vehicle listings" from Manheim.com; (7) a folder describing a "ponzi" mail order scam involving offender Thompson, "Dee Thompson" and "Kate Thompson"; (8) a folder full of notes and printouts of vehicles, their specifications and prices; (9) a folder containing artwork, pictures, and other documents for a business called "MyKnickers.net" which is "owned" by "Katie Thompson," and which markets enters into contacts for "used" female underpants; (10) a 8 ½ by 11 inch home-made sign for "ON-CAR Dealer Services" with a photo of offender Thompson, his name, his DOC #, and address listed on the sign;  (11) a folder which six documents in document protectors Thompson's business "ONCAROMAHA.com"; (12) a folder with 18 documents in document protectors for Thompson's business "ONCAR-Omaha"; (13) a notebook with the "ON-Car" trademark logo on the front. On the back of page 5 of this notebook lists 13 cars that have been purchased and resold. The profits made from each of these cars are listed as follows: $600 (93 Taurus); $2,090 (98 Jeep); $1,750 (98 VW): $1,000 (99 chevy); $800 (00 Toyota); $1800 (00 Dodge); $600 (06 Pontiac); $300 (02 Suzuki); $1200 (04 Ford); $1,495 (04 Ford). The document also states that the profits made from these sales is broken own as follows: "ERIC-8,835.00", "KATIE-600.00," and Chris-1,200." In addition, I find that this evidence indicates that offender Thompson is continuing to disobey orders and continues to operate a used car business within the institution, without the approval of the Warden.

(*Id.* p. 41.)   ALJ Gager further noted:

> I have reviewed and considered the following evidence: The Disciplinary Notice dated 1/23/13 by Stephen Janic; viewing physical evidence; written statements submitted by offender; and the following statements and admissions of the offender: offender states that one of the folders belongs to another offender. He states that it is postmarked 1/22/13. Offender has 8 prior reports for engaging or operating a business without the warden's approval.

(*Id.*)   Warden Ludwick remanded Thompson's appeal for a rehearing for clarification of his argument that he was being charged for copies of documents from previous hearings and of his claim that evidence sent by his attorney was used against him in the hearing. (*Id.* p. 43.)   After the rehearing, Thompson was still found guilty of rule violations, including Rule 34, by ALJ Gager. (*Id.* pp. 45-47.)   The decision was affirmed by Warden Ludwick. (*Id.* p. 48.)

> Another Disciplinary Notice was reported by William Ell on January 24, 2013, as follows:

> On, 1/24/2013, at approximately 8:17 am, I was ask by the Associate Warden of Security, Deb Nichols, to review the USB flashdrive belonging to the Tennis Club. This flashdrive is only used and controlled by one offender; THOMPSON, Eric 1150729. The review of the "drive" discovered many items not related to the Tennis Club. Example are; password encoded files, music files, artwork, MS Paint Program exe., personal legal work for THOMPSON and legal work for persons outside of the institution, also many unauthorized files too numerous to list in the body of this report. All of these discoveries are violations of the policy regarding flashdrive usage. Offender Thompson has been previously warned about keeping unrelated items and password on this drive. The search of this drive is consideration a disruption to the orderly operation of the institution. Additionally, a search of Thompson's personal flashdrive (located in a desk drawer of the gym), also revealed he has unauthorized materials stored on it, namely; art work and related documents to a business he is operating from within the institution. Both drives have been sent to IT staff for further analysis and will be held for report evidence.

(Disciplinary Notice No. 2013000747, Defs.' Supplemental App. (Doc. No. 47-3) p. 32.)   After a hearing on February 4, 2011, ALJ Gager found Thompson guilty of rule violations including Rule 34 based on the following findings of fact:

> On January 24, 2013, at approximately 8:17 am, William Ell was asked by AWS Deb Nichols to review the USB flashdrive belonging to the Tennis Club. This flashdrive is only used and controlled by one offender: THOMPSON, Eric 1150729. The review of the "drive" discovered many items not related to the Tennis Club. Examples are: password encoded files, music files, art work, MS Paint

Program exe., personal legal work for THOMPSON and legal work for persons outside of the institution, and files related to businesses which he is operating or attempting to operate from within the institution. All of these discoveries are violations of the policy regarding flashdrive usage. Thompson has been previously warned about keeping unrelated items and passwords on this drive. The search of this drive is considered a disruption to the orderly operation of the institution. Additionally, a search of Thompson's personal flashdrive (located in a desk drawer of the gym), also revealed he as unauthorized materials stored on it; namely artwork, photos, password encoded files, and documents related businesses he is operating, is attempting to operate, or has operated from within the institution. He is operating or engaging in these business within the assistant of his daughter, Katie Thompson, and mother, Delores Thompson. Offender does not submit any evidence that he has the approval of the warden to engage in any business.

(*Id.* p. 33.)   ALJ Gager further noted:

I have reviewed and considered the following evidence: The Disciplinary Notice dated 1/24/13 by William Ell; a special needs statement submitted by DOC Mental Health professional; viewing physical evidence (flash drives); and the following statements and admissions of the offender: offender states that he does not know what was on the flash drive and that other offender have access to the drive also. He states that there is artwork because he makes banners for the tennis club. He state that he has his legal work on the flash drive because staff allow him to print off his legal work with it. He states that Jason Rung allowed him to make a back up of his legal work. He admits downloading music from the library computer. He states that he only downloaded Beethoven. He states that the flash drive was also missing for a period of time. Offender has 7 prior reports of engaging or operating a business without the approval of the warden.

(*Id.*)

In April of 2013, after judgment was entered in *Thompson* I, Correctional Officer

Shane Hitchcock wrote the following Disciplinary Notice:

On 4/11/2011 at 2350 while I (C/O Shane Hitchcock) was conducting a shakedown of the legal paperwork of inmate Thompson, Eric #1150729 in cell house 219, the following items of contraband were found. 1. Hardcore full penetration sex pictures cut out of magazines. 2. Computer printed pictures with children, nudity and alcohol in photos. 3. Copy of page from the gambling website called "bodog" exampling how to open online betting account. All items were hidden in a folder marked legal. All items violate ISP policy and were sent in as evidence.

(Disciplinary Notice No. 20131003002, Defs.' App. (Doc. No. 10-2) p. 49.)   After a hearing on

April 18, 2013, ALJ Gager found Thompson guilty of rule violations and noted:

I have reviewed and considered the following evidence: The Disciplinary Notice

dated 4/12/13 by Shane Hitchcock; statement by Hitchcock; statement by AWS Nichols stating that offender was issued his legal papers on 3/25/13; viewing physical evidence; copy of offender's property issued, "Property Inventory Change," to offender on 3/25/13; written statement by offender; and the following statements and admissions of the offender: offender states that his legal work and property was taken from him on 1/22/13 when he was given disciplinary notice 20131000723. Offender stated that this property was given to him for only one day (4/11/13) and then taken from him for this current report. He states that he was proven that other property was mixed into his property. This is not accepted. Evidence indicates that the offender was given a footlocker of legal materials on 3/25/13 when he changed his status from DD to Ad Seg. This contradicts offender's statement that he "had received them the same day they where [sic.] taken again." Sanction aggravated: This is offender's second report for possession of hardcore porn. Offender was in possession of sexually suggestive pictures involving children.

(*Id.* p. 50.)   The decision was affirmed by Warden Ludwick. (*Id.* p. 52.)

Another Discipline Notice was written on April 12, 2013, by ISP staff which stated:

On different times and dates in November, 2012, thru January 22nd, 2013, in cell house 218, Eric Thompson 1150729 stated to another person that he was going to kill Associate Warden of Security Debbie Nichols "at the first opportunity". The information that offender Thompson had made these verbal threats was not known until 4-11-13.

(Disciplinary Notice No. 20131003015, Pl.'s Exs. (Doc. No. 56-1) p. 12.)   Thompson denies he

told any inmate that "he was going to kill Security Director Deb Nichol." (Thompson Decl. dated

April 10, 2015 ¶ 21, Pl.'s Exs. (Doc. No. 56-1) p. 15.)   Judge Pratt dismissed without prejudice

Thompson's claims relating to the April 12, 2013 Discipline Notice. (*See* Order (Doc. No. 22) pp.

7-8.)

In September of 2013, Dave DeGrange wrote a Disciplinary Notice against Thompson as

follows:

I, Investigator Dave DeGrange monitored your telephone calls. On 9-15-2013, you Eric Thompson #1150729 at 1446HR. placed a phone call from the institution to (319) 669- 9399. During the phone call you informed your mother "do the same with these as you did before, same information, same as yours on both" thus instructed her to write down "235-1697 and 493-0400".   Further investigation confirms the number you provided to her regard an ad placed in the Waterloo Courier advertising for sale a 2012 Hyundai Sonata GLS one owner, only 3,650 miles, 100,000 mile warranty, many extras, $18,900. Call (319) 235-1697 or (319)

493-0400. The phone call to your mother is evidence you continue to disobey orders and continues to operate a used car business within the institution, without the approval of the Warden. Policy #IO-OR-07 prohibits engaging or operating a business. The 9-15-2013 1446HR. phone call and the Waterloo Courier ad will be provided to the ALJ as evidence. You have several prior reports for operating or engaging in a business without the Warden's approval. Your repeat rule infractions disrupt the orderly running of the institution.

(Disciplinary Notice No. 20131007557, Defs.' App. (Doc. No. 10-2) p. 53.)    ALJ Tricia Johnston

found Thompson guilty of rule violations including Rule 34 upon making the following findings

of fact:

On September 13 and 14, 2013, Offender Thompson made multiple phone calls to his mother, occasionally talking to his father as well. During those conversations, he had general family discussions as well as discussions with his father about his mother needing a new car. At no time during those conversations did he tell his mother that he would get numbers for her to call to look into a new car. On September 15, 2013, Offender Thompson called his mother and, during the course of the conversation, stated he had a phone number for her and that she should "do like you always used to do with this." He then added the numbers started the same as hers, indicating the same area code. He gave her the numbers. She then expressed appreciation and made a comment that Scott would be thrilled because he needs as many clients as he can get. These numbers match an ad in the Waterloo Courier offering a 2012 Hyundai Sonata GLS for $18,900.00. The next day, September 16, 2013, during another conversation with his mother, she tells him that she called the numbers and the two people were interested in investing with them but that it was the same people, just different numbers. She told him they had $18,000 to invest. At his hearing, Offender Thompson was adamant that his family is no longer in the car business and he was not attempting to run a business. He stated he was just giving his mother advice on a car that would work for her to replace her current car. This ALJ has reviewed Offender Thompson's disciplinary history regarding the running of the automobile business from prison and finds that the "do what you always used to do with this" comment clearly directs his mother to proceed with a car purchase in the same manner that they had in the past. The phone calls indicate these numbers are for Scott's clients in one call and people that want to invest $18,000 towards his legal fees in another. There is some evidence that the car, originally advertised for sale at $18,900.00, was going to be purchased by his mother for $18,000. His statements at hearing are not credible and it is obvious they are attempting to cover up the true nature of their communication as they were still attempting to run a business. Offender Thompson has not obtained permission from the Warden to run a business. He is in violation of IDOC Policy IO-RD-03 (IV)(M)(3)(c)(34). This is the 11th disciplinary report this offender has had since 2009 for this same behavior. This ALJ finds this to be an aggravating circumstance warranting an elevation of this offence to a Class C violation.

(*Id.* pp. 54-55.)    ALJ Johnston relied on the following evidence:

> Disciplinary notice written by Dave DeGrange; phone calls between Offender Thompson and his mother and/or father on 9/13/13, 9/14/13, 9/15/13 and 9/16/13; viewing of Courier ad; statements of Offender Thompson's parents; documents provided by Offender Thompson; review of Offender Thompson's disciplinary history and statements by Offender.

(*Id.* p. 55.)   The decision was affirmed by Warden Ludwick. (*Id.* p. 56.)

In October of 2013, Thompson was transferred from the Iowa State Penitentiary in Fort Madison to the Anamosa State Penitentiary. (*See* Defs.' App. (Doc. No. 10-2) pp. 34, 57-58.)

Warden Ludwick explains the decision as follows:

> Based on his continued disciplinary infractions for the same basic issue, and information from staff as to the manipulative nature of Thompson, discussions were held within the institution and as a part of the Security Threat Group committee of the IDOC which is designed to discuss placement decisions of difficult offenders. One of the offenders discussed was offender Thompson. The decision was made to transfer him to a number of different institutions. The reasoning was that Thompson, despite repeated disciplines and the court decision, continued to the same behavior. As well, Thompson himself was an offender who would disrupt operations and work behind the scenes to create disruptions in the orderly operation of the prison.  Thompson has a history of involvement in compromising staff on multiple occasions and introducing contraband within the prison. The strategy is to transfer an offender from his original institution to disrupt their power base and any relationship or familiarity with staff. A series of transfers of an offender from one institution is designed to break the habits of unacceptable behavior and negate the ability to continually disrupt and threaten the security of facility operations. Once the offender begins to modify his behavior, stops violating institutional rules, the transfers will stop and the offender held at a specified prison for a long term commitment. In addition, with an offender who has a documented history of manipulation and compromising the good order of the institution a transfer will provide a break to staff from continually dealing with an offender who is known to be manipulative and causes disruptions.

(Ludwick Aff. dated February 24, 2014 ¶¶ 16-22 (Doc. No. 10-2 pp. 32-33).)

Thompson was transferred from the Anamosa State Penitentiary to the Fort Dodge Correctional Facility on November 25, 2013. (*See* Sperfslage Aff. dated February 24, 2014 ¶¶ 3-9, Ex. A (Doc. No. 10-2 pp. 59-62).)   He was subsequently transferred to the Newton Correctional Facility on January 8, 2014. (*See* Kane Aff. dated February 24, 2014 ¶¶ 3-5, Ex. A. (Doc. No. 10-2 pp. 63-65).)

Two additional Disciplinary Notices were reported for rule violations by Thompson, including Rule 34, on January 21, 2014. (Disciplinary Notice Nos. 20141000509 & 20141000523 (Doc. No. 10-2 pp. 69, 74-75).) Thompson was again found guilty of rule violations by an Administrative Law Judge which was affirmed by the Warden at the Newton Correctional Facility, Terry Mapes. (*Id.* pp. 70-73, 76-79.)

In support of his challenges to the above disciplinary actions, Thompson states the following: "ISP Warden Ludwick and AG William Hill told me I could occasionally speak about cars with my family and friends"; "My family has not participated in the auto business in any way since mid 2011"; and "I have not owned or operated any auto business since my incarceration in 1999." (Thompson Decl. dated April 10, 2015 ¶¶ 15, 20, 25 (Doc. No. 56-1 pp. 14-15).)

## C. Analysis of Thompson's Claims

Thompson brings his claims against the prison officials pursuant to 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Here, Thompson has asserted a variety of alleged constitutional violations against various defendants for various actions. As a whole, this magistrate judge has carefully and diligently reviewed Thompson's claims as stated in his complaints and briefs and is unable to find specific facts showing that there is a genuine issue for trial on any claim even when the record is viewed in a light most favorable to Thompson. The specific issues raised by the parties on the summary judgment motion are addressed as follows.

**1. Constitutionality of Disciplinary Rule 34**

To the extent Thompson continues to challenge the constitutionality of Disciplinary Rule 34, this magistrate judge agrees with defendants that those issues are precluded by the decision of Judge Pratt and affirmance by the Eighth Circuit in *Thompson* I. Collateral estoppel is applicable when:

> (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*Irving v. Dormire*, 586 F.3d 645, 647-48 (8th Cir. 2009)(quoting *Ripplin Shoals Land Co. v. U.S. Army Corps of Eng'rs,* 440 F.3d 1038, 1044 (8th Cir. 2006)(citing *Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166, 1168 (8th Cir.1989))); *see also Ideker v. PPG Indus., Inc.*, 788 F.3d 849, 853 (8th Cir. 2015)(setting forth same elements); *Robbins v. Clarke,* 946 F.2d 1331, 1334 (8th Cir. 1991)(holding prior decision collaterally estopped prisoner's claim which was "simply the same claim repackaged").

Each of those elements are clearly met as to any facial constitutional challenge to Disciplinary Rule 34. *See Thompson*, 561 Fed.Appx. at 586. The same is true for any as-applied challenges to Rule 34 in regard to the disciplinary proceedings specifically addressed in *Thompson* I. *Id.* Consequently, Thompson is estopped from raising those issues in the present action.

This magistrate judge is not convinced, however, that all claims asserted in this case are barred by *Thompson* I as urged by defendants. The merits of the remaining claims, therefore, shall be examined.

## 2. Retaliation Claims Against Reporting Officers

Thompson claims defendants Connie Parmeter, Steve Janic, William Ell, and Dave DeGrange applied Rule 34 against him in an unconstitutional manner in issuing the Disciplinary Notices set forth in the facts above. (*See* Pl.'s Brief (Doc. No. 56) pp. 6-8.) He alleges that the Disciplinary Notices written on January 22, 23, and 24, 2013, "shows Defendants were stacking reports" to retaliate against him. (*Id.*) Thompson has failed to show, however, that there is a genuine issue for trial on those claims.

"An inmate has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights." *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014). But "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008). The prison official "may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Id.* (citing *Goff v. Burton,* 7 F.3d 734, 738–39 (8th Cir. 1993)); *see also Bandy-Bey v. Crist*, 578 F.3d 763, 766 (8ᵗʰ Cir. 2009)(quoting *Hartsfield,* 511 F.3d at 829.)

"[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decision-maker." *Hartsfield,* 511 F.3d at 831. As explained by the Eighth Circuit,

> when there is a disciplinary decision affirming the charge, the "critical inquiry 'is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the

prisoner committed the charged violation of the prison regulations.'" *Cornell v. Woods,* 69 F.3d 1383, 1389 (8th Cir. 1995)(quoting *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994)). If the disciplinary decision is supported by "some evidence," the filing of the charge may not be the basis for a retaliatory-discipline claim. *See, e.g., Santiago v. Blair,* 707 F.3d 984, 993 (8th Cir. 2013); *Moore v. Plaster,* 266 F.3d 928, 931 (8th Cir. 2001); *Henderson,* 29 F.3d at 469 (holding that a disciplinary decision affirming a charge "checkmates [a] retaliation claim"); *Tatum v. Harmon,* 402 Fed.Appx. 158, 159–60 (8th Cir. 2010).

*Sanders*, 773 F.3d at 190. The United States Supreme Court has characterized the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* (quoting *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

Thus, when determining whether the standard has been satisfied, the court is "'not to make an independent assessment of the credibility of witnesses or weigh the evidence." *Id.* at 191 (quoting *Goff v. Burton,* 91 F.3d 1188, 1192 (8th Cir. 1996)). As emphasized by the Eighth Circuit, "[t]he mere fact the witnesses are correctional officers does not undermine their credibility or trustworthiness—these are issues the disciplinary hearing officer is entitled to consider and weigh." *Id.*

Applying those principles here, this magistrate judge finds there is "some evidence" to support the multiple disciplinary charges asserted against Thompson and the decisions finding Thompson guilty of rule violations, specifically in regard to Rule 34. Even when considering the evidentiary record in the light most favorable to Thompson, there is ample evidence showing Thompson actually committed violations of Rule 34 as charged in each of the Disciplinary Notices. Both the reporting officers and the administrative law judges set forth in detail the evidence relied upon for the notices and decisions finding Thompson guilty of violating Rule 34 and various other prison rules. Consequently, Thompson's claims of retaliation against the reporting officers fail

as a matter of law.

**3. Impartiality of Decision Makers and Disciplinary Process**

Thompson claims that defendants Paul Gager, Tricia Johnston and Nick Ludwick violated his constitutional rights when they found him guilty of rule violations and imposed discipline on him as set forth in the facts above. (*See* Pl.'s Brief (Doc. No. 56) pp. 8-13.)   Thompson asserts that ALJ Gager was not an impartial decision maker because he was a defendant in *Thompson* I and he allowed the stacking of reports against him in January of 2013. (*Id.* pp. 8-9.)   He contends that ALJ Johnston improperly relied on telephone conversations which were not listed in the disciplinary report, she did not allow Thompson to call his witnesses and she did not review the investigator's notes in regard to Disciplinary Notice No. 20131007557 heard in September of 2013. (*Id.* pp. 9-10.)   Thompson challenges the impartiality of Warden Ludwick because he also was a defendant in *Thompson* I. (*Id.* pp. 10-12.)

In the opinion of this magistrate judge, and even upon viewing the record in the light most favorable to Thompson, the claims against Gager, Johnston and Ludwick in their respective roles as decision makers are completely without merit and have no evidentiary support.   Instead, Thompson's claims appear to be nothing more than conclusory, self-serving allegations which are insufficient to generate genuine issues for trial.

"Inmates 'duly convicted of crime may not be subjected to additional punishment, not contemplated in their sentence of imprisonment, without due process of law.'" *Malek v. Camp*, 822 F.2d 812, 815 (8th Cir. 1987)(quoting *Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir. 1983)). "The Supreme Court has outlined procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." *Hartsfield,* 511 F.3d at 830 (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (listing "written notice of the charges"; "a brief period ... to prepare"; a written statement of "the evidence relied

on and reasons for the disciplinary action"; and the ability for the inmate to "call witnesses and present documentary evidence")); *see also Sanders*, 773 F.3d at 191 (setting forth requirements for disciplinary hearing under *Wolff*). "Prison officials may not . . . arbitrarily deny an inmate's request to present witnesses or documentary evidence." *Malek*, 822 F.2d at 815. In addition, "an impartial decision-maker is a fundamental requirement of due process . . . fully applicable in the prison context." *Id.* at 816 (internal quotation marks and citations omitted).

Based on this magistrate judge's review of the record, there is no indication that Gager, Johnston and Ludwick failed to conduct impartial due process hearings on the various disciplinary matters brought against Thompson. Instead, the Hearing Decisions entered by the Administrative Law Judges and the corresponding Disciplinary Appeal Responses written by Warden Ludwick show the constitutional requirements for prison disciplinary hearings were sufficiently met. In addition, as determined above, there is not only "some evidence" but ample evidence showing Thompson actually committed violations of Rule 34 as charged in each of the Disciplinary Notices and found guilty of by the Administrative Law Judges and the Warden. No reasonable factfinder could find Thompson's due process rights were violated in any manner or that the Administrative Law Judges and Warden were unconstitutionally biased against Thompson. Defendants Gager, Johnston and Ludwick are, therefore, entitled to summary judgment in their favor on these claims.

### 4. Transfers

Thompson claims that defendants William Sperfslage, Deb Nichols, Dave DeGrange, Nick Ludwick and William Ell encouraged and manipulated lower ranking staff to retaliate against Thompson and move him from institution to institution. (*See* Pl.'s Brief (Doc. No. 56) pp. 13-15.) To the extent those claims stem from the alleged breach of the 2008 immunity agreement, Judge Pratt has previously dismissed such claims and they will not be further addressed. (*See* Order (Doc. No. 22) pp. 4-6.) Any claims which fall outside the context of the alleged breach of the 2008

immunity agreement also fail as a matter of law.

"In general, a prisoner enjoys no constitutionally protected right against transfer to another prison." *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999)(citing *Goff*, 91 F.3d at 1191). "Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison." *Id.* Although prison officials generally may transfer a prisoner for any reason or no reason at all, "a prisoner cannot be transferred in retaliation for the exercise of constitutionally protected rights." *Id.* (citing *Goff*, 91 F.3d at 1191).

Accordingly, to prevail on a § 1983 retaliatory transfer claim, Thompson "'must prove that a desire to retaliate was the actual motivating factor behind the transfer.'" *Id.* (quoting *Goff*, 91 F.3d at 1191.) "In other words, [Thompson] must prove that but for his [constitutionally protected activity], he would not have been transferred." *Id.*; *see also Spencer*, 738 F.3d at 912 (plaintiff "must prove that he would not have been transferred 'but for an unconstitutional, retaliatory motive'")(quoting *Goff*, 7 F3d at 738)). Thompson has failed, however, to submit sufficient evidentiary materials setting out specific facts showing there is a genuine issue for trial on his alleged retaliatory transfer claim.

Even when viewing the evidence in the light most favorable to Thompson, a reasonable juror could not find that the "but for" test is satisfied in this case. Other than Thompson's conclusory allegations, there is a lack of evidence showing the actual motivating factor behind his transfers is a desire by the prison officials to retaliate against him for exercising constitutionally protected rights. While Thompson argues that he should be able to talk to his mother and daughter about cars, he does not have a constitutional right to engage in a business while incarcerated without prior approval of the warden.

On the other hand, defendants have presented a legitimate, non-retaliatory reason for the

transfers: Thompson's repeated violations of Rule 34 and other disciplinary rules of the prison. (*See* Ludwick Aff. dated February 24, 2014 ¶¶ 16-22 (Doc. No. 10-2 pp. 32-33).) As previously found by Judge Pratt in this case, "[a] review of the materials demonstrates that throughout 2013, Thompson repeatedly was disciplined, and the stated reason for moving Thompson from ISP to ASP was his continued violation of institutional rules, including operating a business and possession of pornography." (Order entered March 17, 2014 (Doc. No. 22) p. 5.) Thompson has not sufficiently shown there is a genuine issue of material fact as to the actual motive behind his transfers.

For those reasons, defendants are entitled to summary judgment in their favor on Thompson's alleged claims of retaliatory transfer.

## 5. Access to Courts

Thompson claims he was denied his constitutional right of access to the courts based on the discipline he received in January of 2013 which resulted in the taking of USB flash drives containing his legal materials related to the *Thompson* I litigation, a legal malpractice suit, and his post-conviction proceedings. (Pl.'s Response (Doc. No. 60) pp. 3-4.) He further contends that his ability to tend to his legal matters has been hindered by "Defendants constantly moving" him and thereby causing delay in receiving his legal documents and mail. (*Id.* p. 4.) According to Thompson, it "ultimately ended with [his] criminal Post Conviction case being dismissed." (*Id.*) Defendants, however, assert that the proceedings referred to by Thompson were "litigated by Thompson and decided on the merits." (Defs.' Response to Resistance (Doc. No. 64) p. 1-2.)

"Inmates have a constitutional right of meaningful access to the courts and the legal system." *Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009)(citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 823, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). To prove a violation of this "'right of meaningful access to the

courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield,* 511 F.3d at 830 (quoting *White v. Kautzky,* 494 F.3d 677, 680 (8th Cir. 2007)); *see also Bandy-Bey*, 578 F.3d at 765 (quoting *Hartsfield*, 511 F.3d at 831); *Cody v. Weber*, 256 F.3d 764, 768 (8ᵗʰ Cir. 2001)("an inmate who alleges an access violation is required to show actual injury"). To prove actual injury, the prisoner "must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Hartsfield,* 511 F.3d at 830 (internal quotation marks omitted)(quoting *White,* 494 F.3d at 680 (quoting *Lewis,* 518 U.S. at 353)).

Here, Thompson has not sufficiently shown, through evidence in the record, that his ability to pursue a "nonfrivolous and arguably meritorious" legal claim has been hindered or impeded by the actions of any defendant. Even when viewed in the light most favorable to Thompson, the evidence he has submitted fails to show he suffered actual injury from the taking of his USB flash drives or his transfers. While he refers to his "criminal Post Conviction case being dismissed," the materials submitted by Thompson relating to his postconviction proceedings do not generate a genuine issue of fact that the dismissal was the result of his transfers or the alleged inability to timely access his legal materials. (*See* Exs. to Pl.'s Brief (Doc. No. 63-1).)

To the contrary, Thompson's application for postconviction relief appears to have been dismissed on grounds unrelated to his alleged denial of access to the courts. As explained by the Iowa Court of Appeals,

> Thompson was convicted of first-degree kidnapping on January 27, 2000. He appealed to this court directly and we affirmed his conviction on December 22, 2000. *State v. Thompson,* No. 0–744, 2000 WL 1868961 (Iowa Ct. App. Dec.22, 2000). His application for further review was denied and procedendo issued March 19, 2001. He filed a pro se application for postconviction relief in 2002 which was denied. He again appealed and we affirmed. *Thompson v. State,* No. 05–1231, 2006 WL 2419128 (Iowa Ct. App. Aug.23, 2006). Thompson filed a second application for postconviction relief on July 30, 2012. He alleged flaws in the trial information

and jury instructions. The district court denied his application, finding it was barred by our statutory limitation on postconviction actions. *See* Iowa Code § 822.3 (2011). He appeals from that dismissal.

*Thompson v. State*, 847 N.W.2d 236, 2014 WL 970059 (Iowa Ct. App. March 12, 2014). In affirming the dismissal of his application, the Iowa Court of Appeals stated:

> Thompson makes no argument that the errors he complains of—error in the trial information and jury instructions—were not available to him within the three-year statutory period. While he argues the errors were "structural," this ignores the fundamental problem: Thompson has brought these claims more than ten years after procedendo issued and must show the issue could not have been raised during the three-year time period.

*Id.*

Other than Thompson's conclusory allegation, there is insufficient evidence for a reasonable juror to find Thompson was denied his constitutional right of meaningful access to the courts. Consequently, defendants are entitled to summary judgment in their favor on this claim.

**6. Violation of First Amendment Claim Against Warden Nick Ludwick**

Thompson alleges that in July of 2013 Warden Ludwick violated his First Amendment rights by refusing Thompson permission to talk with his mother and daughter regarding the auto business. Thompson describes the incident as follows:

> That on 07-16-2013 is e-mailed the ISP Warden's office requesting *"warden I would like to teach my daughter and mother what I know about the auto business, not run it, would you approve me teaching them such?"* Response: sent by Rebecca Bowker on 7-30-2013, *"No-I strongly encourage you to focus on doing your time and following institutional rules. Your family has other resources that may be available to them on the outside they can pursue."*

(Thompson Decl. dated April 10, 2015 ¶ 22 (Doc. No. 56-1 p. 15).) Thompson asserts he has a First Amendment right to teach his daughter the used car business. (Pl.'s Response (Doc. No. 60) pp. 6-8.) Judge Pratt allowed Thompson to pursue his claim against Warden Ludwick but dismissed his claim against Rebecca Bowker. (*See* Order (Doc. No. 22) pp. 8-9.)

In order to prove retaliation in violation of the First Amendment under § 1983, a prisoner

"must 'show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013)(quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)(citing *Naucke v. City of Park Hills,* 284 F.3d 923, 927–28 (8th Cir. 2002))); *see also Santiago v. Blair,* 707 F.3d 984, 991 (8th Cir. 2013)(setting forth same elements); *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010)(same). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer*, 738 F.3d at 911 (quoting *Cody,* 256 F.3d at 771 (citing *Madewell v. Roberts,* 909 F.2d 1203, 1206-07 (8th Cir. 1990))).

The claim is distinguishable from claims for retaliatory discipline which may be defended by a showing of "some evidence" as discussed above. *Id.* As explained by the Eighth Circuit, "[a]dverse actions which may show retaliation include denial of privileges or acts worsening an inmate's working conditions." *Id.* (internal citations omitted). "The key question is whether the actions were taken in retaliation for engaging in protected activity." *Id.*

After considering the record in the light most favorable to Thompson, this magistrate judge finds there is lack of evidence showing Warden Ludwick violated Thompson's First Amendment rights. Instead, the evidentiary record establishes that the actions taken by Warden Ludwick in response to Thompson's communications with his mother and daughter, or his requests to speak with his mother and daughter, about the "auto business" were based on Rule 34's prohibition against inmates engaging in a business without approval. Because Judge Pratt and the Eighth Circuit have upheld Rule 34, the alleged adverse action taken against Thompson was not motivated by, or made in retaliation to, his exercise of constitutionally protected activity. Stated plainly, Thompson does not have a constitutionally protected right to engage in the auto business while

incarcerated through communications with his mother and daughter. Thompson's self-serving characterization of those communications which have been found to violate Rule 34 as merely "teaching" them the auto business is not supported by the evidentiary record and fails to show there is a genuine issue for trial on the claim.

Defendant Nick Ludwick is, therefore, entitled to summary judgment in his favor on Thompson's claim of violation of his First Amendment rights.

## 7. Conspiracy

Thompson claims that defendants William Sperflsage, Dave DeGrange, William Ell, Paul Gager, Deb Nichols, and Nick Ludwick have conspired to stop him from filing lawsuits against them and wrote disciplinary reports against him to justify his transfers to other institutions. As before, to the extent Thompson's claims of conspiracy stem from the alleged breach of the 2008 immunity agreement, Judge Pratt has previously dismissed those claims and they will not be further addressed. (*See* Order (Doc. No. 22) pp. 4-6, 11-12.) Any claims of conspiracy which fall outside the context of the alleged breach of the 2008 immunity agreement also fail as a matter of law.

To prove a § 1983 conspiracy claim, "the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *see also Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798 (8th Cir. 2013)(setting forth same elements). "[T]he plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail" on the conspiracy claim. *Askew*, 191 F.3d at 957. "A conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). A "plaintiff need not show that

each participant knew 'the exact limits of the illegal plan ...,' but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008)(quoting *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996)).   As cautioned by the Eighth Circuit,

> [t]he question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims. Because the elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided. The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy.

*Id.* (quotation marks and citations omitted).   These principles were recently reiterated in *Solomon v. Petray*, ___ F.3d ___, 2015 WL 4546837 *8 (8th Cir. July 29, 2015).

Here, the evidentiary record before the court is insufficient as a matter of law to support a finding that Thompson suffered a constitutional deprivation as a result of an alleged conspiracy. Foremost, as determined above, Thompson has failed to sufficiently show the deprivation of any constitutional right at the hands of any of the defendants.   Even when viewed in the light most favorable to Thompson, there is a lack of evidence to support a reasonable inference that any of the defendants conspired to deprive Thompson of his constitutional rights.

As a result, defendants are entitled to summary judgment in their favor on Thompson's alleged claims of conspiracy.

## IV. CONCLUSION & RECOMMENDATION

After a thorough review of the entire record before the court, this magistrate judge concludes that Thompson has failed to submit evidentiary materials that set out specific facts showing that there is a genuine issue for trial.   Defendants, on the other hand, have shown there

is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law on all claims. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Doc. No. 47) be granted and judgment be entered in favor of defendants.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), the parties shall until **August 17, 2015,** to serve and file specific written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy. (*Id.*)

Dated July 31, 2015.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE